**STATE of Iowa, Appellee,**

v.

**James Ellis THORNBURGH, Appellant.**

**No. 56210.**

Supreme Court of Iowa.

July 31, 1974.

Philip F. Miller, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., Ray A. Fenton, Co. Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

September 14, 1972, a Polk County grand jury returned an indictment accusing James Ellis Thornburgh of the crime of larceny in the nighttime as defined in section 709.4, The Code. He appeals from judgment entered on a jury verdict convicting him of the lesser and included offense of larceny of the property of the value of more than $20. Section 709.2.

The factual circumstances of the offense arise out of the removal of a $3500 boat from the parking lot of Graber's Boat Sales in Johnston, Iowa. About 11:40 p. m. May 25, 1972, Officer Kinney of the Johnston police force saw defendant parked in the front of the Iltis Lumber Company with the hood of his car raised; Graber's Boat Sales is directly across the street from the lumber company. Upon inquiry defendant told Kinney the car had overheated and he was waiting for it to cool off.

Approximately one hour later the officer saw defendant drive away from Graber's pulling a boat behind him. The boat trailer had no lights and bore a 1971 license plate. Kinney stopped the car and asked defendant where he was going with the boat. Defendant stated he was taking it to a friend named Anderson who lived in Des Moines. Defendant did not remember Anderson's first name, however, nor did he remember where he lived. He stated Anderson purchased the boat that afternoon and had asked him to deliver it to Collin's Market on 63rd Street in Des Moines.

However, the boat was owned by Jack Benoit whose agent, Don Owens, had taken it to Graber's for repairs approximately two weeks previously. Defendant testified on his own behalf. His story was that he and a Mr. Anderson went to Graber's on the afternoon of May 25 and Anderson purchased the boat involved. Anderson allegedly showed defendant a bill of sale that same afternoon. Defendant stated he was simply acting on Anderson's request to deliver the boat to him when he picked it up that night.

Defendant has failed to separately and distinctly state the errors relied on for reversal. Rather, he presents an argument in five divisions. In most instances contentions which do not involve closely related propositions of law are argued together.

We summarize his contentions as gathered from the divisions of his argument as maintaining the trial court erred: (1) in overruling the motion to strike the amendment to the indictment and the request for bill of particulars; (2) in making and sustaining its own objections to questions asked by defense counsel; in denying defendant's motion for in camera inspection of an officer's note; in denying defendant's motion to suppress evidence of defendant's prior felony conviction; (3) in overruling defendant's motion for mistrial following the State's argument in which the assistant county attorney committed prejudicial error in alluding to the bad criminal character of defendant in jury argument; (4) in instructing the jury on recent possession of stolen property and im-

peachment for felony convictions; and (5) in overruling defendant's motions for directed verdict, new trial and in arrest of judgment.

I. The indictment as filed charged that Thornburgh committed larceny in the building and store of Graber's Boat Sales & Service in the city of Johnston, Polk County, Iowa, in the nighttime and took, stole and carried away therefrom goods and personal property the value of which exceeded the sum of $20.

January 30, 1973, approximately one week before trial, the court granted the State's oral ex parte request for amendment to the indictment by substitution of "construction" for "building and store."

The following statutes are pertinent to the problem presented:

"773.43 Amendment. The court may, on motion of the state, and before or during the trial, order the indictment so amended as to correct errors or omissions in matters of form or substance."

"773.44 Amendment before trial. If the application for an amendment be made before the commencement of the trial, the application and a copy of the proposed amendment shall be served upon the defendant, or upon his attorney of record, and an opportunity given the defendant to resist the same."

■ These code sections provide the extent and manner in which an indictment may be amended. The State is without authority to amend in any respect save that authorized by section 773.43. The motion provided for in that section cannot be made before trial in any manner except as permitted in section 773.44. State v. Kiefer, 183 Iowa 319, 330, 163 N.W. 698, 702; State v. Bamsey, 208 Iowa 802, 806, 226 N.W. 57, 58.

Although the record does not disclose when defendant's counsel entered his appearance in this matter the clerk's transcript shows counsel made a motion for speedy indictment which was filed in the Polk district court September 13, 1972. Nevertheless, the order granting the ex parte oral motion did not direct that a copy of the order be mailed or served on defendant or his attorney of record in order to afford opportunity to resist the motion.

February 5, 1973, before commencement of trial defendant moved to strike the indictment as amended on the ground the order authorizing the amendment was based on the State's oral motion; that no written notice or written amendment was filed in the cause; and the order was entered ex parte without defendant being advised of the proposed amendment and without notice and opportunity to be heard.

It must be conceded the statutory procedure set out earlier was not followed.

At the close of defendant's motion the court inquired of defense counsel if he wanted to then make a resistance. Instead, counsel insisted it would be proper for the court to rule on his motion to set aside the indictment. The court again inquired if counsel wished to make a resistance. When he replied, "No, Your Honor", the court overruled the motion and ordered the matter to proceed to trial advising counsel again that he had an opportunity to make a resistance but in the absence thereof the amendment was going to stand.

The court erred in entering its January 30 order authorizing the amendment—a conclusion which hardly admits of argument. The question is whether the error was prejudicial.

■ Under sections 773.43 and 773.44 an accused is entitled to be advised in a specified manner both of the substance and form of the proposed amendment to the indictment to the end that an opportunity be given him to resist the filing of such amendment.

The portion of the reporter's transcript set out above makes plain the court afforded defendant an opportunity to resist the amendment at the February 5 hearing on

defendant's motion to strike the indictment. At that time defendant was afforded due process—notice and opportunity to be heard. In our opinion every purpose of the statutes was thus accomplished.

It appears defendant's purpose in the proceedings had immediately before commencement of trial was to have the court strike the indictment so as to be without jurisdiction to hear the offense charged. The trial court by its ruling refused to do that but did afford defendant opportunity to be heard in resistance.

In light of the fact Thornburgh's defense was essentially that he lacked the requisite intent necessary to sustain a conviction of the crime charged because he believed the boat belonged to Anderson for whom he was merely delivering it, the error of the court in entering its January 30 order could have had no influence in the course of the trial. No prejudice resulted.

The assignment is without merit.

II. In one brief point of division 2 of defendant's brief and argument he maintains a conviction too remote to have probative value should not be automatically received into evidence for impeachment purposes and should be excluded by the trial court in the exercise of its sound discretion.

It was stipulated defendant had been convicted of the felony offense of breaking and entering in 1959 and served in the penitentiary until his discharge August 1962; defendant had no other convictions.

Prior to trial defendant's motion to prevent the State from questioning defendant about any prior felony convictions was overruled by the court. The trial court stated that if defendant took the stand the State had the right in examining defendant for impeachment purposes to inquire whether he had been convicted of a felony.

After the State rested and before hearing defense testimony, defense counsel made a detailed motion asking the court to prevent the State from questioning defendant about any prior felony convictions. In substance the motion was based on the assertion the trial court had discretion to exclude such evidence due to its lack of probative value because of the remoteness of the conviction and by reason of such evidence being highly prejudicial in character outweighing its relevancy as to defendant's credibility.

Examination of the record leaves no doubt the assigned error was adequately preserved for consideration by this court.

The trial court in ruling on this motion indicated it felt bound by the present law of Iowa in light of the fact the Iowa Supreme Court had not adopted rule 609, Proposed Rules of Evidence for United States Courts and Magistrates.

April 24, 1974, more than a year after the trial in the present matter, this court announced its decision in State v. Martin, 217 N.W.2d 536.

In *Martin* the court announced that the standard adopted in that decision was not retroactively applicable but that, "It will be applied only to * * * (3) cases tried before the filing of this opinion in which error has been properly preserved, and which (a) are pending on appeal to this court at the time of filing of this opinion, * * *."

After the motion was overruled in the present case defendant testified on his own behalf. The State on cross-examination asked defendant if he had ever been convicted of a felony. Defense counsel promptly objected to the question for the reasons urged in the motion previously made in the absence of the jury. The objection was overruled. The assigned error was properly preserved at this stage.

At the proper time defendant by objection to the instructions and again in motion in arrest of judgment and for new trial asserted proper objections regarding the use of prior felony convictions for impeachment purposes.

The question of the extent and limitations on the use of previous felony convictions for impeachment purposes allowable under section 622.17, The Code, was thoroughly discussed in State v. Martin. We there held, 217 N.W.2d at 541–542, this statute places the discretion as to admissibility of evidence of prior felony convictions in the judge rather than the cross-examiner and that " * * * for the purpose of attacking the credibility of any witness, including an accused under Code section 622.17, evidence that he has been previously convicted of a felony is admissible only if (1) the felony involved dishonesty or false statement, and (2) the judge determines any danger of unfair prejudice does not substantially outweigh the probative value of such prior felony conviction, taking into account such factors as (a) nature of the conviction, (b) its bearing on veracity, (c) its age, and (d) its propensity to improperly influence the minds of the jurors." ·

 The holding in *Martin* is therefore applicable. In light of that decision we hold the trial court abused its discretion in admitting into evidence over proper and timely objection evidence relating to a prior felony conviction of defendant in 1959. Because of remoteness the evidence as to this conviction was not relevant on the issue of defendant's credibility.

This error requires reversal.

III. In view of the necessity of a new trial the question of the alleged prejudicial conduct of the assistant county attorney in alluding to the bad character of defendant in final argument to the jury should not ordinarily arise again in a retrial. This is also true as to the court's instruction on impeachment for a felony conviction. These are matters which defendant urged in divisions 3 and 4 of his written argument.

IV. Defendant's contention argued in division 1 challenging the court's failure to sustain his motion for bill of particulars need not be reached. By reason of this trial he should have all the information that could be possibly furnished in a bill of particulars.

V. On three occasions the trial court on its own motion limited defense counsel's cross-examination of a witness.

 The trial court has the power, in the exercise of sound discretion, to exclude improper evidence; absent an objection by opponent's counsel, however, it is ordinarily not the judge's duty to exclude evidence or interpose an objection to the question. State v. York, 211 N.W.2d 314, 318 (Iowa 1973). See also Barber v. State Highway Commission, 80 Wyo. 340, 342 P.2d 723, 727; McCormick on Evidence, (Second Ed.), section 55, p. 129. For the trial court to object on its own initiative there must be good reason, that is, grounds for exclusion of the evidence. State v. York, supra.

The trial court's first objection to a question was on the grounds the question asked invaded the province "of the Court and jury;" the second objection was on the grounds the question was argumentative. Finally, the third objection by the court was based on the grounds the question asked was repetitious.

 When defense counsel asked Officer Kinney whether he had testified before the grand jury concerning the stopping by defendant's car earlier in the evening, the trial court objected to the question on the grounds it was repetitious. The record shows, however, this matter had not been brought up prior to that time. The court's stated ground for objecting was therefore simply not correct; since no other proper ground is apparent trial court erred in interposing the objection. State v. York, supra. Any question as to preservation of error is overcome by the fact of defendant's exception to the court's objection.

 The trial court's second objection was to this question asked by defense

counsel: "You are a police officer for how many years?" The trial court's objection to this question was on the grounds it was argumentative. An argumentative question is one that "merely invokes the witness' assent to the questioner's inferences from or interpretations of the facts proved or assumed." McCormick on Evidence, (Second Ed.), section 7, p. 11. Without stating his experience or other classifications, witness Kinney testified on direct examination that he was a police officer in the town of Johnston. Clearly, defense counsel's question was not argumentative; again trial court erred in interposing its own objection to a proper question.

■ Finally, when defense counsel asked Mr. Graber, the owner of the boat sales company, what type of "construction" was around his business, the trial court objected on the grounds the question "involves the province of the Court and jury as to the term 'construction.'" The objection was apparently that the witness was being asked to answer an "ultimate question." See McCormick on Evidence, (Second Ed.), pp. 27–28. Although not well phrased, the question would seem to be proper because the witness owned the premises and the word "construction" was used in the indictment.

■ The trial court should· act impartially and avoid conduct by which the jury could infer bias against either party. State v. O'Kelly, 211 N.W.2d 589, 596 (Iowa 1973). In general, the court should also avoid extreme use of its power to question witnesses in order not to assume the role of an advocate. State v. Winchester, 166 Kan. 512, 203 P.2d 229, 233; McCormick on Evidence, (Second Ed.), section 8; 98 C.J.S. Witnesses § 348, p. 66. The tendency towards advocacy would seem to also arise in the context of objecting to questions by counsel.

It is interesting to note that in State v. York, 211 N.W.2d at 317, defendant on appeal there contended the trial court committed reversible error by failing to interpose objections on its own motion to the State's evidence even though defense counsel had not seen fit to urge objections. In the present case the contention is made that the trial court erred in making objections on its own motion. There is a well-known phrase which aptly fits the situation in which a trial court finds itself which need not be repeated. The matters complained of are not likely to recur in a new trial.

■ VI. The court instructed the jury over defendant's objection:

"If you find from the evidence beyond a reasonable doubt that: (1) the property claimed by the State to have been stolen was stolen; (2) defendant thereafter had possession of the property; and (3) defendant's possession was recent, then you may, but are not required to, infer that defendant stole it.

"The inference of theft may be rebutted. * * *."

Defendant argues the instruction improperly shifted the burden of proof and violated his fifth amendment right against self-incrimination. He also maintains the instruction violates the presumption of innocence as guaranteed by amendment 14.

State v. Hansen, 203 N.W.2d 216 (Iowa 1972), State v. Sloan, 203 N.W.2d 225 (Iowa 1972), State v. Hutton, 207 N.W.2d 581 (Iowa 1973) and State v. Prouty, 219 N.W.2d 675 (Iowa 1974), each involved instructions relating to the statutory presumption arising from the presence of a specified percentage of alcohol in defendant's blood where he had been charged with operating a motor vehicle while under the influence of intoxicating liquor. An attack was directed in each case to the following portion of the instruction:

"However, such inference is not conclusive, but is rebuttable. It may be overcome or rebutted by evidence to the contrary."

In the course of the opinion in *Hansen,* 203 N.W.2d at 219–220, the court said:

"* * * We find nothing prejudicial in that part of Instruction * * * which sets out the statutory language that the presence of the stipulated percentage of alcohol in defendant's blood is presumptive evidence he was under the influence of an intoxicating beverage. However, we hold the instruction then erroneously converts this into a *conclusive* presumption if evidence is not produced to rebut it. The statute was not intended to serve that purpose; nor could it constitutionally do so.

"* * *

"We recognize the instruction now under attack does not specifically require *defendant* to produce rebutting testimony; but it does demand that someone—either defendant or the State—do so when it tells the jury the blood test results 'may be overcome or rebutted by evidence to the contrary.'" (Emphasis in the original)

In each case the instruction was held prejudicially erroneous.

State v. O'Kelly, 211 N.W.2d 589 and State v. Houston, 211 N.W.2d 598, (Iowa 1973), both concern prosecutions for receiving stolen goods under section 712.1, The Code. In each case the court said "that unexplained possession of recently stolen property permits the jury to infer the property was received with guilty knowledge." However, the question of the constitutionality of instructions was not reached in either case.

In the present case the challenged instruction deals with the common law inference of guilt from unexplained possession of recently stolen property. The instruction is not subject to the attack directed to the paragraph quoted earlier from the instruction considered in *Hansen* and those cases following that decision since it does not at any point convert the inference arising from the unexplained possession of recently stolen property into a conclusive presumption of guilt if evidence is not pro-

duced to rebut it. Even if possession by defendant remained unexplained he could not be found guilty if the state failed to prove his guilt beyond a reasonable doubt.

The jury is simply told in the present instruction that if it finds beyond a reasonable doubt (1) the property involved was stolen and (2) defendant thereafter had recent possession, it was authorized but not required to draw a permissible inference defendant had stolen it. We do not find it constitutionally objectionable in the respects urged. It satisfies the requirement of due process. See Barnes v. United States, 411 U.S. 946, 93 S.Ct. 2357, 37 L. Ed.2d 380.

In view of the fact the instruction authorizes merely a permissible inference it may be considered advisable on retrial to omit the statement "the inference of theft may be rebutted" from the instruction as given in the present case.

VII. Upon cross-examination defense counsel elicited testimony from Officer Kinney that he had made personal notes on the investigation and would need to refer to such notes to be able to state whether he stopped by defendant's car earlier in the evening. Defendant's motion for in camera production and inspection of the notes for possible impeachment purposes was denied. Relying on State v. Mayhew, 170 N.W.2d 608 (Iowa 1969), defendant asserts error in this denial.

The State in seeking to support the trial court's ruling on defendant's request insists the present case is distinguishable from *Mayhew* in that it does not appear Officer Kinney's notes were filed with anyone but were merely personal memoranda. The State insists in any event *Mayhew* is bad law and should be overruled. We are not persuaded by the State's argument either that *Mayhew* is bad law or that it should be overruled.

■ As indicated, Officer Kinney had testified on direct examination that he saw defendant parked in front of the lumber-

yard with the hood of his car raised; that upon inquiry defendant told the officer the car had overheated and he was waiting for it to cool off. On cross-examination after calling the officer's attention to the fact he had previously testified at the preliminary hearing in this matter, at the trial of another defendant arising from this incident and before the grand jury and had never at any time mentioned he had observed defendant at the lumberyard when he was having car trouble, the witness was asked if he had refreshed his memory about the incident from personal notes. The witness replied he had but it was from the notes appearing on the back of the subpoena which included a summary of his grand jury testimony. When asked if he had recorded anything in his personal notes about the incident to the effect he had stopped and asked defendant if he needed assistance, he answered, "I really don't know. I would have to get my personal notes and I do not have them."

Finally, when asked where the notes were the witness replied, "At the police station."

In our opinion in the circumstances shown Kinney's notes qualify as a statement of the witness in the possession of the prosecution relating to the subject matter as to which Kinney had testified. Whether the notes contained relevant matter which might properly be used for impeachment purposes is another question. Since we do not have the notes before us we are not able to say. However, defendant's counsel should have had opportunity for a determination as to whether the notes contained statements relevant to impeachment. On a retrial he should be given this opportunity.

Because of the determination made in division II hereof the case is—Reversed.

MOORE, C. J., and REYNOLDSON and HARRIS, JJ., concur.

RAWLINGS, J., concurs in result.